UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEDA ESSA, as mother, natural guardian
and Next Friend of, and on behalf of,
her minor daughter, "ZN"

       Plaintiff,

v.                                                                     Case No.

H&M HENNES & MAURITZ AB, a                            Honorable
foreign entity sometimes doing business as
"H&M Group" and/or "H&M",

                     Defendant.
_____/

| ROBERT M. SOSIN (P35414) | JOEL B. SKLAR (P38338) |
|---|---|
| Alspector, Sosin & Noveck, PLLC | Law Offices of Joel B. Sklar |
| Attorneys for Plaintiff | Co-Counsel for Plaintiff |
| 30100 Telegraph Road, Suite 360 | 500 Griswold Street, Suite 2450 |
| Bingham Farms, MI 48025 | Detroit, MI 48226-3421 |
| (248) 642-3200 | (313) 963-4529 |
| robert@asnlaw.com | joel@joelbsklarlaw.com |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Complaint

NOW COMES NEDA ESSA ("Neda"), as mother, natural guardian and Next Friend of, and on behalf of, her minor daughter, ZN ("ZN") – Neda and ZN are sometimes hereafter referred to collectively as "Plaintiff" – and along with Plaintiff's attorneys makes the following Complaint against the above-named Defendant:

1.      Plaintiff resides, and at all times here pertinent resided, in Wayne County, Michigan, and Plaintiff is a citizen of the State of Michigan.

2.      Plaintiff is informed and believes and therefore avers that Defendant H&M HENNES & MAURITZ AB, sometimes doing business as "H&M Group" and/or as "H&M" ("Defendant"), is, and at all times here pertinent has been, a Swedish entity with its principal place of business located in the Country of Sweden.

3.      Plaintiff is informed and believes and therefore avers that Defendant conducts, and at all times pertinent has conducted, business extensively throughout the State of Michigan (including Wayne County), both through sales at its "brick and mortar" retail stores located throughout the State of Michigan (including Wayne County) and via internet sales to persons and entities throughout the State of Michigan (including Wayne County), and Defendant otherwise has engaged in activities and sold products in the State of Michigan (including Wayne County) so as to subject Defendant to the jurisdiction of this Court.

4.  This Court has subject matter jurisdiction over the instant civil action pursuant to 28 USC §1332 as the amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs, and is between citizens of different

States.

5. Plaintiff is informed and believes and therefore avers that Defendant is, and at all times pertinent herein was, in the business of producing, designing, manufacturing, constructing, inspecting, testing, assembling, marketing, advertising, distributing, selling, shipping and placing in the stream of commerce various consumer products, including a child's headband or hairband, Defendant's Article No. 13-8427 (the "Headband" – image below).



Such Headband and its component parts are referred to collectively as the "Subject Product."

6. This is an action for product liability arising out of the purchase from

Defendant of the "Subject Product" and the subsequent devastating injury to ZN caused by the Subject Product.

7. On or about November 13, 2017, Neda purchased from Defendant's website the Subject Product for her daughter ZN.

8. Defendant, through its website and otherwise, marketed, represented and sold the Subject Product as safe and appropriate for children ages 1½ to 10 years old.

9. On May 11, 2018, ZN (age 2 years old at the time) was wearing the Subject Product on her head. When ZN took off the Subject Product from her head and then attempted to place it back onto her head, the unprotected, sharp tip of one of the lower prongs of the Subject Product violently struck ZN's right eye causing her the injuries and damages more fully set forth below.

10. As the entity involved in the manufacturing, designing, selling, marketing, advertising, assembling, inspecting, repairing, maintaining, placing into the stream of commerce and/or testing of the Subject Product, Defendant and its agents, servants and employees owed certain duties to Plaintiff herein, including but not limited to those duties to observe the laws of the State of Michigan, the various statutes and regulations of the State of Michigan and of the Federal government and the industry standards (as a minimum), the pertinent

4

ordinances, the common law in such case made and provided, the contractual obligations and undertakings between Defendant and Plaintiff, both expressed and implied, in the design, manufacture, assembly, marketing, distribution, advertising, recall, repair, modification, servicing, and/or replacement of the Subject Product and its component parts and systems, and in the placing and giving of warnings and instructions on the Subject Product itself and/or otherwise, in connection with the usage thereof by persons including Plaintiff herein, Plaintiff having fully performed all things by Plaintiff to be performed thereunder.

11. In addition, Defendant expressly and/or impliedly warranted that the Subject Product and its component parts were of merchantable quality and would be safe and fit for ordinary use, and would be reasonably fit for the purposes and uses intended and/or reasonably foreseeable uses, and would not cause injury; and Plaintiff was protected by such warranties.

12. However, Defendant and its agents, servants and employees did breach their duties and obligations owing to Plaintiff in the following ways, among others: by manufacturing, designing, selling, marketing, advertising, installing, assembling, inspecting, monitoring, repairing, maintaining, placing into the stream of commerce and/or testing (hereafter collectively referred to as "Producing") the Subject Product that was not fit for the ordinary and foreseeable

purposes for which it was used, contrary to Defendant's express and/or implied warranties of fitness and merchantable quality and contrary to the common law and applicable provisions of the Uniform Commercial Code; by selling, marketing, advertising, placing into the stream of commerce and/or delivering (hereafter collectively referred to as "Selling") the Subject Product that was not fit for the ordinary and foreseeable purposes for which it was used, contrary to Defendant's express and/or implied warranties of fitness and merchantable quality and contrary to the common law and applicable provisions of the Uniform Commercial Code; by Producing the Subject Product that was unfit, unmerchantable and unsafe and defective at the time it left Defendant's possession and control; by Selling the Subject Product that was unfit, unmerchantable and unsafe and defective at the time it left Defendant's possession and control; by Producing the Subject Product that was not fit for the ordinary and foreseeable purposes for which it was used; by Selling the Subject Product that was not fit for the ordinary and foreseeable purposes for which it was used; by Producing the Subject Product that was unfit, unmerchantable and unsafe and defective at the time it left Defendant's possession and control; by Selling the Subject Product that was unfit, unmerchantable and unsafe and defective at the time it left Defendant's possession and control; by Producing and/or Selling the Subject Product

containing unreasonably dangerous defects; by Producing and/or Selling the Subject Product without proper or adequate inspection and testing; by Producing and/or Selling the Subject Product without proper warnings, cautions and/or instructions as to the dangers and hazards posed by such product, and as to the safe and proper use of such product; by Producing and/or Selling the Subject Product when Defendant knew such product lacked protective coverings over the exposed, unprotected, sharp tips of the lower prongs of the Subject Product; by Producing and/or Selling the Subject Product when Defendant knew or should have known that such product had the propensity for striking the user of such product in the eye with the exposed, unprotected, sharp tips of the lower prongs of the Subject Product; by Producing and/or Selling the Subject Product when Defendant knew or should have known that such product contained a defect that allowed or caused the exposed, unprotected, sharp tips of the lower prongs of the Subject Product to come into contact with the eyes of the user of such product; by Producing and/or Selling the Subject Product when Defendant knew or should have known that such product contained a defect that allowed or caused the exposed, unprotected, sharp tips of the lower prongs of the Subject Product to come into contact with the eyes of the user of such product; by failing to properly test (or to test at all) the Subject Product to determine if it contained any one or

more of the defects identified herein; by failing to properly warn (or to warn at all) Plaintiff and others that the Subject Product contained any one or more of the defects identified herein; by failing to employ or implement in the Subject Product any one or more technically feasible alternative production practice that was available to Defendant at the time the Subject Product left Defendant's control and which practice would have prevented the harm suffered herein to ZN without significantly impairing the usefulness or desirability of the Subject Product, and without creating equal or greater risk of harm to ZN and others; by failing to timely recall the Subject Product; by failing to properly and adequately label the Subject Product with appropriate and complete warnings, precautionary statements and/or instructions as to the hazards and dangers posed by such product; by representing expressly and/or impliedly that the Subject Product was safe for use in all foreseeable circumstances when in truth and fact such representations were untrue and that the Subject Product was inherently dangerous to human life and health; and by otherwise failing in its duties and obligations owing to Plaintiff, including Defendant's strict liability in tort as contemplated by the Restatement of Torts, Section 402(2).

13. Further and alternatively, Defendant produced and sold the Subject Product containing unreasonably dangerous defects, and which were unsafe, all

contrary to express, and/or implied warranties of fitness and merchantable quality, and contrary to the common law and contrary to the provisions of the Uniform Commercial Code and of the Uniform Sales Act, and contrary to the provisions of MCL 440.2314, et seq., as well as being contrary to the Michigan statutes and ordinances, federal statutes and regulations and the common law.  The implied warranties required that Defendant's product be reasonably fit for the purposes and uses intended or reasonably foreseeable by Defendant.

14. Furthermore, Plaintiff's losses and damages herein (more fully set forth below), including non-economic losses, were the result of Defendant's gross negligence, and/or that at the time of manufacture and/or distribution of the Subject Product, Defendant had actual knowledge that the Subject Product was defective and that there was a substantial likelihood that the defect would cause the complained-of injury that is the basis of this action, and that Defendant willfully disregarded that knowledge in the manufacture and/or distribution of such product and therefore [as provided by MCL 600.2946a(3)] the limitations on non-economic damages under MCL 600.2946a (1) are not applicable, and that (as provided in MCL 600.2949a) the provisions of MCL 600.2946(4), MCL 600.2946a, MCL 600.2947(1) to(4), and MCL 600.2948 (2) do not apply.

15. Plaintiff did not know, nor should Plaintiff reasonably have known,

that the Subject Product was defective or dangerous in any of the ways elsewhere herein set forth, which defects were hidden from and unknown to and unknowable to users of such product, including Plaintiff.

16. As a natural, direct and proximate result of one or more or all of wrongful acts and omissions of Defendant and/or its agents, servants and/or employees, singly and/or in combination with each other, ZN was caused to suffer severe physical and emotional injuries and damages, and likely will so suffer in the future; and she was caused to suffer serious and permanent injuries to, and loss of the useful vision in, her right eye for which she has had to undergo long, painful and inconvenient surgeries and treatments in an effort to cure herself of such conditions, and she likely will have to so suffer in the future and to undergo such additional treatments in the future; and she has been caused to suffer tremendous pain, discomfort, anguish, suffering, disability, shock, disfigurement, scarring, deformities, and great humiliation and mortification, and she is likely to so suffer in the future; and she has been caused to suffer learning, developmental, emotional and social disabilities and delays, and she is likely to so suffer in the future; and the function of diverse muscles, sinews, membranes, ligaments, nerves, blood vessels and/or other organs of her body and/or limbs were affected and/or their functions impaired; and she likely will suffer disability, loss of wages, loss of

earning ability and/or capacity, and impairment of earning ability and/or capacity; and she has been and likely will be unable in the future to perform many of the normal and enjoyable activities of her life; and she likely will be unable in the future to perform many of her customary duties and obligations in and about her household; and for long periods of time she has required various kinds of assistance and in the future may so require; and she has incurred and likely will incur in the future great indebtedness, expense and inconvenience attempting to cure and/or correct the conditions Defendant brought about; and she has been obliged, and may become obligated in the future, to undergo long and painful tests, hospitalizations, surgeries, treatments and therapies attempting to treat and cure herself of such injuries and conditions; and she has suffered and in the future may suffer impairments and other weaknesses and debilities as a result thereof; and she has suffered and in the future may suffer other losses and damages.

    WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendant in an amount greatly in excess of Seventy-five Thousand ($75,000.00) Dollars to which she is found to be entitled, for damages sustained and to be sustained in the future, together with costs, interest and attorney fees.

<u>Demand for Jury Trial</u>

Plaintiff hereby demands a trial by jury of the above cause.

Respectfully submitted,

/s/ Robert M. Sosin
_____
ROBERT M. SOSIN (P35414)
Attorney for Plaintiff

/s/ Joel B. Sklar
_____
JOEL B. SKLAR (P38338)
Co-Counsel for Plaintiff

DATED: April 14, 2022